**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 15-61813-CIV-GAYLES

AUDEMARS PIGUET HOLDING SA,
BREITLING U.S.A., INC.,
LVMH SWISS MANUFACTURES, S.A.,
HERMÈS INTERNATIONAL, and
OMEGA SA,

                   Plaintiffs,

vs.

ALLSWISSWATCH.EU, *et al.*,

                   Defendants.

_____/

**PLAINTIFFS' MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT**
**AGAINST DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

      Plaintiffs, Audemars Piguet Holding SA ("Audemars Piguet"), Breitling U.S.A., Inc.

("Breitling USA"), Hermès International ("Hermès"), LVMH Swiss Manufactures, S.A.

("LVMH"), and Omega SA ("Omega") (collectively, "Plaintiffs"), by and through their

undersigned counsel, hereby move this Honorable Court for an entry of final default judgment

against Defendants, the Individuals, Partnerships and Unincorporated Associations identified on

Schedule "A" hereto (collectively "Defendants"), and in support thereof, submit the following

Memorandum of Law.

**I.**      **INTRODUCTION**

      Plaintiffs initiated this action against Defendants through the filing of their Complaint for

federal trademark infringement and counterfeiting (Count I), false designation of origin (Count

II), cybersquatting (Count III), common law unfair competition (Count IV), and common law

trademark infringement (Count V). Defendants are in default, and the prerequisites for a default

judgment have been met. As relief, Plaintiffs seek default judgment finding Defendants liable on all counts of Plaintiffs' Complaint. Plaintiffs pray such judgment includes the entry of a permanent injunction and an award of statutory damages to Plaintiffs for Defendants' willful counterfeiting pursuant to 15 U.S.C. § 1117(c). Plaintiffs also request the Court cancel, or at Plaintiffs' election, transfer the domain names at issue to Plaintiffs to ensure the associated websites may no longer be used as a means for selling goods bearing counterfeits and infringements of Plaintiffs' trademarks and infringing upon Plaintiffs' rights.

## II.   STATEMENT OF FACTS

### A.   Plaintiffs' Rights.

Plaintiff Audemars Piguet is the registered owner of the federally registered Audemars Piguet trademark (the "Audemars Piguet Mark") identified in Paragraph 5 of the Declaration of Yves Bugmann in Support of Plaintiffs' Motion for Final Default Judgment ("Bugmann Decl."). See also United States Trademark Registration of the Audemars Piguet Mark attached as Exhibit A to the Complaint [ECF No.1-2]. The Audemars Piguet Mark is used in connection with the manufacture and distribution of, among other things, watches. (See Bugmann Decl. ¶ 5.)

Plaintiff Breitling USA is the registered owner of the federally registered Breitling trademark (the "Breitling Mark") identified in Paragraph 12 of the Bugmann Declaration. See also United States Trademark Registration of the Breitling Mark attached as Exhibit B to the Complaint [ECF No.1-3]. The Breitling Mark is used in connection with the manufacture and distribution of, among other things, watches. (See Bugmann Decl. ¶ 12.)

Plaintiff Hermès International ("Hermès") is the registered owner of the federally registered Hermès trademark (the "Hermès Mark") identified in Paragraph 19 of the Bugmann Declaration. See also United States Trademark Registration of the Hermès Mark attached as

Exhibit C to the Complaint, [ECF No.1-4]. The Hermès Mark is used in connection with the manufacture and distribution of, among other things, watches. (See Bugmann Decl. ¶ 19.)

Plaintiff LVMH Swiss Manufactures, S.A. ("LVMH") is the registered owner of the federally registered Tag Heuer trademark (the "Tag Heuer Mark") identified in Paragraph 26 of the Bugmann Declaration. See also United States Trademark Registration of the Tag Heuer Mark attached as Exhibit E to the Complaint [ECF No.1-6]. The Tag Heuer Mark is used in connection with the manufacture and distribution of, among other things, watches. (*See* Bugmann Decl. ¶ 26.)

Plaintiff Omega, SA ("Omega") is the registered owner of the federally registered Omega trademark (the "Omega Mark") identified in Paragraph 33 of the Bugmann Declaration. See also United States Trademark Registration of the Omega Mark attached as Exhibit D to the Complaint [ECF No.1-5]. The Omega Mark is used in connection with the manufacture and distribution of, among other things, watches. (See Bugmann Decl. ¶ 33.)

The Audemars Piguet Mark, Breitling Mark, Hermès Mark, Tag Heuer Mark, and Omega Mark (collectively "Plaintiffs' Marks") are symbols of Plaintiffs' respective quality, reputations, and goodwill and have never been abandoned. (Bugmann Decl. ¶¶ 5-9, 12-16, 19-23, 26-30, 33-37.)  Furthermore, Plaintiffs have extensively used, advertised, and promoted their respective Marks in the United States in association with their respective goods, and have carefully monitored and policed the use of Plaintiffs' Marks. (Id. at ¶¶ 9, 16, 23, 30, 37.)  As a result of Plaintiffs' respective efforts, members of the consuming public readily identify products bearing Plaintiffs' Marks as being quality merchandise sponsored and approved by Plaintiffs. (Id. at ¶¶ 8, 15, 22, 29, 36.)  Plaintiffs' Marks have achieved secondary meaning as identifiers of high quality products.

### B.    Defendants' Infringing Acts.

As alleged by Plaintiffs, admitted by default, and established by the evidence submitted herewith, Defendants operate and control the fully interactive, commercial Internet websites operating under the domain names set forth on Schedule "A" hereto (the "Subject Domain Names").  As such, Defendants are the active, conscious, and dominant forces behind the promotion, advertisement, distribution, offering for sale or sale of goods bearing counterfeit and infringing trademarks which are exact copies of Plaintiffs' Marks (the "Counterfeit Goods"). (See Compl. ¶¶ 14-21, 52-67, 75-78, 81-86, 95-97, 101-102 ; see also Bugmann Decl. ¶ 39; and Composite Exhibit F attached to the Complai[1]nt, relevant web pages from Defendants' Internet websites operating under Subject Domain Names ("Defendants' Websites) [ECF Nos. 1-7 through 1-19]; Declaration of Virgilio Gigante in Support of Plaintiffs' Motion for Final Default Judgment ¶ 4 ("Gigante Decl.") and Comp. Ex. A attached thereto.)

Further, as admitted by Defendants through default, at all times relevant, Defendants have had full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their exclusive right to use and license such intellectual property and the goodwill associated therewith. (Compl. ¶¶ 57.) Defendants do not have, nor have they ever had, the right or authority to use Plaintiffs' Marks for any purpose. (Bugmann Decl. ¶¶ 39, 40.)  However, despite their known lack of authority to do so, Defendants have engaged in the activity of promoting, and otherwise advertising, selling, offering for sale, and distributing their Counterfeit Goods via the Internet websites operating under the Subject Domain Names. (Compl. ¶¶ 14-21, 52-67, 75-78, 81-86, 95-97, 101-102; see also Bugmann Decl. ¶ 39.)

---

[1] After filing the Complaint in this action, Plaintiffs discovered that certain Defendants are continuing to engage in and expand their illegal use of Plaintiffs' trademarks at issue in this action by registering and/or maintaining new domain names.  (See Gigante Decl. ¶ 4 and Comp. Ex. A thereto.) As such, new domain names are included in Schedule "A" attached hereto. (Id.)

Plaintiffs' evidence, obtained as a result of their investigation of Defendants, clearly demonstrates Defendants are engaged in the fraudulent promotion, advertisement, distribution, offering for sale, and sale of goods bearing counterfeits of Plaintiffs' Marks.  Plaintiffs' representative, Yves Bugmann, who has the ability to identify distinctions between genuine versions of Plaintiffs' branded merchandise and counterfeit copies of the same, reviewed and visually inspected the Internet websites operating under the Subject Domain Names, together with the items bearing Plaintiffs' Marks offered for sale by Defendants thereunder, including the detailed web page captures of Plaintiffs' branded goods. (Bugmann Decl. ¶¶ 40.)

### C.    Procedural Background

On August 28, 2015, Plaintiffs filed their Complaint against Defendants [ECF No.1]. On December 22, 2015, Plaintiffs filed their Motion for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3) [ECF No.12], which the Court granted on January 1, 2016 [ECF No.15].  Pursuant to the Court's Order, Plaintiffs served each Defendant with its respective Summons and a copy of the Complaint via e-mail and publication on January 11, 2016. (See Gigante Decl. ¶ 7; see also ECF No. 19, Proof of Service on file with the Court.)

The time allowed for Defendants to respond to the Complaint has expired. (See Gigante Decl. ¶ 8.)  Defendants have not been granted any extension of time to respond, nor have they served or filed an Answer or other response. (Id. at ¶ 9.) To Plaintiffs' knowledge, none of the Defendants are infants or incompetent persons, and, upon information and belief, none of the Defendants are individuals; therefore, the Servicemembers Civil Relief Act does not apply. (Id. at ¶ 10.)  On March 28, 2016, Plaintiffs filed their Request for Clerk's Entry of Default [ECF No.21].  On March 29, 2016, the Clerk entered default against each Defendant, for failure to

appear, plead, or otherwise defend pursuant to Rule 55(a) of the Federal Rules of Civil Procedure [ECF No.22]. Plaintiffs now move the Court to grant Default Final Judgment against Defendants.

III.   <u>ARGUMENT</u>

    **A.   Default Judgment Should be Entered Against Defendants.**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.  Personal jurisdiction over Defendants and venue in this district are proper under 28 U.S.C. § 1391 as Defendants direct business activities toward consumers within this district and cause harm to Plaintiffs' respective business within this district through the fully interactive commercial Internet websites operating under the Subject Domain Names. (<u>See Compl.</u> ¶¶ 1-3, 11, 17, 56.)

    **1.   Default Judgment is Proper.**

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. By such a default, all of Plaintiffs' well-pled allegations in the Complaint are deemed admitted. <u>See Buchanan v. Bowman</u>, 820 F.2d 359 (11th Cir. 1987); <u>Petmed Express, Inc. v. Medpets.com</u>, 336 F.Supp.2d 1213, 1217 (S.D. Fla. 2004). In this case, the Complaint, pleadings, and declaration filed in support of Plaintiffs' Motion for Entry of Final Default Judgment clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants.

    **2.   Factual Allegations Establish Defendants' Liability.**

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake,

or to deceive."  In order to prevail on their trademark infringement claim under Section 32 of the Lanham Act, Plaintiffs must demonstrate "(1) that [they] had prior rights to the mark at issue and (2) that the defendant[s] had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001) (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 360 (11th Cir. 1997)).

To prevail on a claim of false designation of origin under Section 43(a) of the Lanham Act, Plaintiffs must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiffs.  15 U.S.C. § 1125(a)(1). As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S.Ct. 2753, 2763 (1992).

Plaintiffs' Complaint also sets forth a cause of action for cybersquatting pursuant to the Anticybersquatting Consumer Protect Act ("ACPA") 15 U.S.C. § 1125(d). To prevail under 15 U.S.C. § 1125(d), Plaintiffs must demonstrate that "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 Fed.Appx. 252, 256, 2006 WL 2847233, at *3 (11th Cir. 2006).  See 15 U.S.C. § 1125(d).

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. Rolex Watch U.S.A., Inc. v. Forrester, No. 83–8381–Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false designation of origin, and unfair competition under the common law of Florida, is set forth in John H. Harland, Inc. v. Clarke Checks, Inc., 711 F.2d 966, 972 (11th Cir. 1983).").

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act, evaluating whether there is a likelihood of confusion between the registered mark and the allegedly infringing mark. See PetMed Express, Inc., 336 F. Supp. 2d at 1217-18.

The well-pled factual allegations of Plaintiffs' Complaint, including specifically those pled in Paragraphs 14-21, 52-67, 75-78, 81-86, 95-97, 101-102 [ECF No.1], properly allege the elements for each of the above claims. Moreover, the factual allegations in Plaintiffs' Complaint, substantiated by the evidence submitted herewith, conclusively establish Defendants' liability under each of the claims asserted in the Complaint. (Bugmann Decl. ¶¶ 39-41.) Accordingly, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants.

**B.      Plaintiffs' Requested Relief Should Be Granted**

**1.      Entry of a Permanent Injunction is Appropriate.**

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy

at law for the injury caused by a defendant's continuing infringement." Burger King Corp. v. Agad, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. See e.g., Petmed Express, Inc., 336 F. Supp. 2d at 1222-23. Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiffs to prevent further infringement absent an injunction. See Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.") Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin Defendants from continuing to infringe any of Plaintiffs' intellectual property rights, including Plaintiffs' Marks.

Permanent injunctive relief is appropriate where a plaintiff demonstrates 1) it has suffered irreparable injury; 2) there is no adequate remedy at law; 3) the balance of hardship favors an equitable remedy; and 4) an issuance of an injunction is in the public's interest. eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006).  As demonstrated herein, Plaintiffs have clearly carried their burden on each of the four factors, warranting permanent injunctive relief. Accordingly, permanent injunctive relief is appropriate.

Defendants' actions merit permanent injunctive relief, not only to protect Plaintiffs' respective reputations, but also to protect consumers from being deceived as to the quality and source of products bearing Plaintiffs' respective trademarks. The facts alleged in Plaintiffs' Complaint, substantiated by the evidence submitted herewith, shows Defendants are "continuously infringing and inducing others to infringe" Plaintiffs' Marks by using them to

advertise, promote, and sell goods bearing marks which are identical or altered to be identical to Plaintiffs' Marks. (Compl. ¶ 75; Bugmann Decl. ¶ 39)

Plaintiffs are each clearly suffering, and will continue to suffer, irreparable injury if Defendants' infringing activities are not permanently enjoined. (Bugmann Decl. ¶ 45.)  In trademark cases, "a sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir.1998). See also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 986 (11th Cir.1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales."). In any event, Plaintiffs' Complaint alleges that Defendants' unlawful actions have caused Plaintiffs irreparable injury, and will continue to do so if Defendants are not permanently enjoined. (Compl. ¶¶ 71, 79, 87, 93, 98, 103.) Defendants have defaulted upon Plaintiffs' factual allegations in that respect.

Additionally, Plaintiffs have no adequate remedy at law so long as Defendants continue to operate the Internet websites under the Subject Domain Names because Plaintiffs will have no control of the quality of what appear to be their products in the marketplace. (See Compl. ¶¶ 52-53, 76, 82, 95, 102.) An award of money damages alone will not cure the injury to Plaintiffs' respective reputations and goodwill which will result if Defendants' infringing and counterfeiting actions are allowed to continue. Moreover, it can hardly be said that Defendants face hardship in refraining from their willful infringement of Plaintiffs' respective trademarks, whereas Plaintiffs face hardship from loss of sales and their inability to control their respective reputations. In reality, Defendants have no cognizable hardship, as they will be prohibited from selling counterfeit goods, which is an illegal act to begin with. Finally, the public has an interest

in the issuance of a permanent injunction against Defendants in order to prevent consumers from being misled by Defendants' products.  See Nike, Inc. v. Leslie, 227 U.S.P.Q. 574, 575 (1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior.")  Ultimately, the permanent injunction will prevent consumer confusion and deception in the marketplace, and will protect Plaintiffs' property interest in their respective Marks, which are the touchstones of trademark law.

Furthermore, as admitted by Defendants through default, (i) the Subject Domain Names are essential components of Defendants' counterfeiting and infringing activities; and (ii) the domain names themselves are the means by which Defendants further their counterfeiting scheme and cause harm to Plaintiffs. (Compl. ¶ 11.)  Therefore, in order to effectuate the injunction as a practical matter, the Subject Domain Names should be ordered transferred to Plaintiffs' control by Defendants, their registrars, and/or registries. Absent the transfer of the Subject Domain Names, Defendants will remain free to continue infringing Plaintiffs' respective trademarks with impunity and will continue to benefit from the Internet traffic to those websites built through the unlawful use of Plaintiffs' trademarks.

The Court's powers of equity are sufficiently broad to compel measures necessary to enforce an injunction against infringement. See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15 , 91 S. Ct. 1267, 1276 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). District courts are

11

expressly authorized to order the transfer or surrender of domain names in an in rem action against a domain name. See 15 U.S.C. §§ 1125(d)(1)(C), (d)(2). However, the remedy is by no means limited to that context. See, e.g., Philip Morris USA v. Otamedia Ltd., 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (Yesmoke.com domain name transferred to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace."); Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (defendants ordered to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)). Many courts, including this Court, have not hesitated to order the transfer of domain names when faced with factual scenarios similar to the one herein.[2]

Defendants have created an Internet-based counterfeiting scheme and are profiting from the deliberate misappropriation of Plaintiffs' respective rights. Accordingly, the Court should permanently prohibit Defendants from conducting their unlawful activities by transferring the

---

[2] See e.g., Gucci America, Inc. v. GUCC-OUTLET.COM, Case No. 15-cv-62165-DPG (S.D. Fla. Jan. 28, 2016) (awarding transfer of domain names at issue as part of grant of permanent injunction); Mycoskie, LLC v. 2015tomsonsale.com, Case 15-cv-61537-DPG (S.D. Fla. Dec 18, 2015) (same); adidas AG et al v. 007adidasuk.com, Case No. 15-cv-61275-DPG (S.D. Fla. Oct. 28, 2015) (same); Chanel, Inc. v. 4fashionistas.net, Case No. 15-cv-60010-DPG (S.D. Fla. May 4, 2015) (same); Chanel, Inc. v. chanelzone.com, Case No. 14-cv-62436-DPG (S.D. Fla. Mar. 16, 2015, entered on docket Mar. 18, 2015) (same); Louis Vuitton Malletier, S.A. v. 2013lvshop.com, Case No. 14-cv-61698-DPG (S.D. Fla. Dec. 8, 2014) (same). See also Under Armour, Inc. v. 51nfljersey.com, No. 13-62809-CIV, 2014 WL 1652044, at *7 (S.D. Fla. April 23, 2014) (same); adidas AG v. 2013jeremyscottxadidas.com, No. 13-61867-CIV, 2014 WL 799132, at *8 (S.D. Fla. Feb. 28, 2014) (same); Chanel, Inc. v. 7perfecthandbags.com, No. 12-22057-CIV, 2014 WL 352197, (S.D. Fla. Jan. 31, 2014) (same); Louis Vuitton Malletier, S.A. v. 100wholesale.com, No. 12–21778–CIV, 2013 WL 1296283 (S.D. Fla. Mar. 28, 2013) (same); Chanel, Inc. v. chanelbagonlinesales.com, Case No. 15-cv-60836-WJZ (S.D. Fla. Aug. 10, 2015) (same).

Subject Domain Names to Plaintiffs, where they may be disabled from further use as platforms for the sale of counterfeit goods.

### 2. Damages as to Count I for Trademark Counterfeiting and Infringement.

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. § 1117(c)(1).  In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiffs elect to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to set an amount of statutory damages. Petmed Express, Inc., 336 F. Supp. 2d at 1219 (citing Cable/Home Commc'n Corp. v. Network Prod., Inc., 902 F.2d 829, 852 (11th Cir. 1990).  Indeed, an award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."). Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. See, e.g., S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages.)  See also Petmed Express, Inc., 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. Petmed Express, Inc., 336 F. Supp. 2d at 1220.  A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights. See Arista Records, Inc. v. Beker Enter., Inc., 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. See Petmed Express, Inc., 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true). In either case, a defendant is deemed to have the requisite knowledge that its acts constitute an infringement.

Plaintiffs' Marks are renowned worldwide as identifiers of high quality merchandise, and the fact that Defendants offered for sale and sold goods using marks which are identical or altered to be identical to such strong marks shows their desire and purpose to trade upon Plaintiffs' respective goodwill. Indeed, in a case of clear-cut copying such as this, it is appropriate to infer that Defendants intended to cause confusion and benefit from Plaintiffs' respective reputations, to Plaintiffs' detriment. See Petmed Express, Inc., 336 F. Supp. 2d at 1220 (court infers intent to confuse consumers into believing affiliation from Defendants' use of such a mark that was confusingly similar). Moreover, in this district, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" Turner Greenberg Assocs., 320 F. Supp. 2d 1317, 1333 (S.D. Fla. 2004) (citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)).

Here, the evidence clearly establishes Defendants intentionally copied Plaintiffs' Marks for the purpose of deriving the benefit of Plaintiffs' respective world-famous reputations. In any

event, Defendants defaulted on Plaintiffs' allegations of willfulness. (Compl. ¶ 70.) See Arista Records, Inc. 298 F. Supp. 2d at 1313 (finding a Court may infer willfulness from the defendants' default.) As such, this Court should award a significant amount of statutory damages under the Lanham Act to ensure Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each Defendant promoted, distributed, advertised, offered for sale, and/or sold goods bearing marks which were in fact counterfeits of at least one of Plaintiffs' Marks. (Compl. ¶¶ 22, 28, 34, 40, 46; Bugmann Decl. ¶¶ 39-41.)  Based on the above considerations, Plaintiffs respectfully suggest the Court award the statutory damage of $100,000.00 against each Defendant.

Plaintiffs' requested damage amount is at the low end of the range prescribed under 15 U.S.C. § 1117(c)(2) and should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' respective trademarks, compensate Plaintiffs, and punish Defendants, all stated goals of 15 U.S.C. § 1117(c). Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083; Petmed Express, Inc., 336 F. Supp. 2d at 1222 ("statutory damages under § 1117(c) are intended not just for compensation for losses, but also to punish and deter wrongful conduct."). This Court and others have granted statutory damages under the Lanham Act similar to Plaintiffs' request herein.[3]

---

[3] See, e.g.,, Gucci America, Inc. v. gucc-outlet.com, Case No. 15-cv-62165-DPG (S.D. Fla. Jan. 28, 2016) (awarding Plaintiff $100,000.00 against each Defendant); Mycoskie, LLC v. 2015tomsonsale.com, Case 15-cv-61537-DPG (S.D. Fla. Dec 18, 2015) (awarding Plaintiff $150,000.00 against each Defendant).  See also Chanel, Inc. v. cheapchanelsale2015.com, Case No. 15-cv-62046-BB (S.D. Fla. Jan. 22, 2016, entered on docket Jan. 25, 2016) (awarding Plaintiff $100,000.00 against each Defendant); Gucci America, Inc. v. 6abag.net, Case No. 15-cv-60959-BB (S.D. Fla. Jan. 11, 2016, entered on docket Jan. 12, 2016) (awarding Plaintiff $100,000.00 against each Defendant); Chanel, Inc. v. chanelplus5.top, Case No. 15-cv-62045-

### 3.      Plaintiffs' Damages as to Count II for False Designation of Origin.

Plaintiffs' Complaint also sets forth a cause of action for false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II). As to Count II, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on Count II should be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

### 4.      Plaintiffs' Damages as to Count III for Cybersquatting.

Plaintiffs' Complaint further sets forth a cause of action for cybersquatting pursuant to Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §1125(d) as to Plaintiff Audemars Piguet and Plaintiff Breitling USA.  As admitted by default, and established by the evidence submitted herewith, many of the Defendants (collectively the "Cybersquatting Defendants") have acted with the bad faith intent to profit from Plaintiffs' Marks and the goodwill associated with those respective trademarks by registering their corresponding Subject Domain Names identified on Schedule "B" hereto, (collectively the "Cybersquatted Subject Domain Names") which are identical, confusingly similar to, or dilutive of at least one of Plaintiffs' Marks . (Compl. ¶¶ 61-66.)  The Cybersquatted Subject Domain Names incorporate one or more of Plaintiffs' trademarks in their entirety surrounded by descriptive or generic terms, rendering the domain name nearly identical to Plaintiffs' trademarks. Even minor variations to a plaintiff's mark in a domain name can be confusingly similar. See Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) ("taking of an

---

WPD (S.D. Fla. Jan. 6, 2016) (awarding Plaintiff $2,000,000.00 against each Defendant); Gucci America, Inc. v. 2005qihui8, Case No. 15-cv-61649-WPD (S.D. Fla. Nov. 13, 2015) (awarding Plaintiff $100,000.00 against each Defendant); Audemars Piguet Holding SA v. chinaone886, Case No. 15-cv-60861-JIC (S.D. Fla. Oct. 30, 2015) (awarding Plaintiffs $100,000.00 against each Defendant); Chanel, Inc. v. 668xiaohua, Case No. 15-cv-60571-WJZ (S.D. Fla. Oct. 16, 2015) (awarding Plaintiff $100,000.00 against each Defendant).

identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion among Internet users as a matter of law."); DaimlerChrysler v. The Net Inc., 388 F.3d 201, 205-06 (6th Cir. 2004) ("Courts generally have held that a domain name that incorporates a trademark is 'confusingly similar to' that mark if 'consumers might think that [the domain name] is used, approved, or permitted' by the mark holder."). Furthermore, it is indisputable that Plaintiffs' Marks are famous and distinctive. Plaintiffs' respective genuine goods are among the best-selling high quality luxury products in the world, and Plaintiffs' Marks enjoy widespread recognition and are prominent in the minds of the consuming public. (Bugmann Decl. ¶¶ 6-8, 14-15.)

        As to the issue of bad faith, the ACPA lists nine factors for courts to consider in determining whether a domain name has been registered or used in "bad faith" with an intent to profit from a mark in registering or using the mark in a domain name. See 15 U.S.C. § 1125(d)(1)(B)(i); Taverna Opa Trademark Corp., 2010 WL 1838384, at *2.  The nine factors are not meant to be exclusive and the Court may consider the context of the matter in making a determination of bad faith.  See Victoria's Cyber Secret Ltd. P'ship, 161 F. Supp. 2d at 1347. An examination of the relevant bad faith factors compels the conclusion that Defendants' registration and use of the Cybersquatted Subject Domain Names violates 15 U.S.C. § 1125(d).

        The first and third factors, § 1125(d)(1)(B)(I) and (III), are clearly present inasmuch as the Cybersquatting Defendants have no rights in Plaintiffs' Marks and the Cybersquatting Defendants have never used Plaintiffs' Marks  in connection with a bona fide offering of goods or services. Additionally, the fourth, fifth, and ninth factors, § 1125(d)(1)(B)(IV), (V) and (IX), weigh in Plaintiffs' favor.  As discussed above, the Cybersquatting Defendants have clearly intentionally incorporated at least one of Plaintiffs' Marks in their domain names to divert

consumers looking for Plaintiffs' Internet website to their own Internet website for commercial gain. Such consumers are likely to be confused as to the source and sponsorship of the Cybersquatting Defendants' Internet websites and mistakenly believe the websites are endorsed by and/or affiliated with Plaintiffs. Clearly, the Cybersquatting Defendants' registration of the Cybersquatted Subject Domain Names, in order to promote and/or offer for sale counterfeit and infringing versions of Plaintiffs' branded goods, knowing the domain names are identical or confusingly similar to Plaintiffs' respective indisputably famous and distinctive marks ensures a likelihood of confusion among consumers. See House Judiciary Committee Report on H.R. 3028, H.R. Rep. No. 106-412 p. 13 (October 25, 1999) ("The more distinctive or famous a mark has become, the more likely the owner of that mark is deserving of the relief available under this act.").

Upon a finding of liability, the ACPA expressly empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(c); Victoria's Cyber Secret Ltd. P'ship, 161 F. Supp. 2d at 1356. Accordingly, Plaintiffs are entitled to the transfer and ownership of the Cybersquatted Subject Domain Names because they are confusingly similar to their respective trademarks. See id. at 663. Additionally, Plaintiffs may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just. 15 U.S.C. § 1117(d). Plaintiffs elect statutory damages and submits that in view of the Cybersquatting Defendants' intentional, wrongful behavior, an award in the amount of $10,000.00 against each of the Cybersquatting Defendants for each of their respective Cybersquatted Subject Domain Names, as outlined on Schedule "B" hereto, would be just. See Taverna Opa Trademark Corp., 2010 WL 1838384, at *3 (awarding

$10,000.00 in statutory damages for the infringing domain name at issue); Chanel, Inc. v. cheapchanelsale2015.com, Case 15-cv-62046-BB (Jan. 22, 2016) (same).

     **5.**     **Plaintiffs' Damages as to Count IV for Common Law Unfair Competition and Count V for Common Law Trademark Infringement.**

Plaintiffs' Complaint also sets forth a cause of action under Florida's common law of unfair competition (Count IV) and Florida's common law trademark infringement (Count V). Plaintiffs submit that judgment on Count IV should also be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

**IV.**    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court enter final default judgment and a permanent injunction against Defendants in the form of the proposed Final Default Judgment and Permanent Injunction filed herewith.

Dated:  April 4, 2016          Respectfully submitted,

                              STEPHEN M. GAFFIGAN, P.A.

                              By: s:/**Virgilio Gigante**/_____
                              Stephen M. Gaffigan (Fla. Bar No. 025844)
                              Virgilio Gigante (Fla. Bar No. 082635)
                              T. Raquel Rodriguez-Albizu (Fla. Bar. No. 103372)
                              401 East Las Olas Blvd., Suite 130-453
                              Ft. Lauderdale, Florida 33301
                              Telephone: (954) 767-4819
                              Facsimile: (954) 767-4821
                              E-mail: Stephen@smgpa.net
                              E-mail: Leo@smgpa.net
                              E-mail: Raquel@smgpa.net

                              Attorneys for Plaintiffs

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Defendant Number | Defendant / Subject Domain Name |
|---|---|
| 1 | allswisswatch.eu |
| 1 | audemarspiguetreplica.us |
| 1 | bigbangreplica.com |
| 1 | bigbangreplica.net |
| 1 | breitlingreplicas.net |
| 1 | elitereplicawatch.eu |
| 1 | hublotreplicas.net |
| 1 | replicahause.ca |
| 1 | replicahause.com.au |
| 1 | replicahause.es |
| 1 | replicahause.me |
| 1 | replicahause.nl |
| 1 | replicamaster.ca |
| 1 | replicaperfection.eu |
| 1 | swissclock.eu |
| 1 | swisskings.eu |
| 1 | thereplicahause.co |
| 1 | thereplicahause.com.au |
| 1 | watchrepublic.eu |
| 1 | allswisswatch.nl |
| 1 | breitlingreplicas.nl |
| 1 | elitereplicawatch.nl |
| 1 | replicahaus.com.au |
| 1 | replicahaus.es |
| 1 | replicahaus.nl |
| 3 | asinewatches.com |
| 4 | bestwatches.cn |
| 4 | fakewatchchina.com |
| 5 | boxmontre.com |
| 6 | buywatcheshere.ru |
| 8 | demontres.com |
| 9 | demo-watch.cn |
| 9 | ftwatches.cn |
| 9 | owatcho.co |
| 9 | watchestoo.co |
| 9 | watchyo.net |
| 9 | owatcheso.co |
| 10 | eagerwatch.com |
| 11 | echowatch.ru |
| 12 | ensurewatch.com |

| | |
|---|---|
| 13 | eshotrelojes.com |
| 14 | fakewatchmall.com |
| 15 | fitreplica.com |
| 17 | hoowatch.com |
| 19 | idomontres.com |
| 20 | inwatchsale.net |
| 23 | justmontres.fr |
| 24 | kowatches.co |
| 25 | luxmall.su |
| 26 | luxorelogio.com |
| 27 | luxuhrende.com |
| 28 | luxuhrensite.com |
| 29 | luxurymy.ru |
| 30 | mowatch.cn |
| 31 | orologireplicait.com |
| 32 | perfectwatches.cn |
| 32 | breitlingwatch.net |
| 32 | breitlingwings.com |
| 32 | paradisiac.info |
| 32 | perfectwatches.info |
| 32 | replicacartierwatches.net |
| 32 | replicamagic.com |
| 32 | replicamagic.net |
| 32 | replicawatchreport.biz |
| 32 | tswisstime.net |
| 32 | watch321.biz |
| 32 | watchrex.net |
| 32 | wow-first.org |
| 32 | yourtrustytime.info |
| 33 | pursevalley.cn |
| 33 | classicwatch.net |
| 33 | guccireplicawatch.com |
| 33 | knock-off-watches.com |
| 33 | replica-gucci-watches.com |
| 33 | swiss-made.co |
| 33 | swiss-watch.co |
| 33 | honeyreplicas.info |
| 33 | i-replicastore.com |
| 34 | relojesmercado.com |
| 35 | relojesreplicas24h.com |
| 35 | newatchesail.com |
| 37 | replicahause.eu |
| 38 | replicahause.fr |
| 38 | replicahaus.fr |
| 39 | replicahause.mx |

| 40 | replicamontres.com |
|----|--------------------|
| 41 | replicasales.com |
| 42 | replicawatchespakistan.com.pk |
| 44 | replikeuhren.com |
| 45 | repliks.com |
| 46 | replux.ru |
| 47 | rolex-sell.com |
| 48 | royalwatch.com.pk |
| 49 | salewatches2.ru |
| 50 | snewatch.com |
| 52 | standwatches.com |
| 53 | swissreplication.eu |
| 53 | swissreplication.nl |
| 54 | takewatches.com |
| 55 | teresaduck.com |
| 56 | thereplicahause.fr |
| 57 | thuswatch.com |
| 58 | trustytime.ru |
| 59 | u2watchesale.com |
| 60 | uhrentoyou.com |
| 61 | uhrenvonale.com |
| 62 | uorderwatches.com |
| 63 | vcwatches.com |
| 64 | ventwatch.com |
| 64 | luxshop.su |
| 64 | luxusales.ru |
| 64 | made2u.su |
| 64 | replicaonline.co.uk |
| 64 | vastwatch.ru |
| 64 | vreplicas.ru |
| 64 | watchjust.su |
| 65 | volluhren.com |
| 66 | watchesaleoff.com |
| 66 | inwatchsale.ru |
| 67 | watchesalon.ru |
| 67 | watchesalon.com |
| 68 | watchesatpar.com |
| 69 | watchesdata.com |
| 69 | yewatchsale.com |
| 70 | watchgoing.fr |
| 70 | cnmontres.com |
| 71 | watchesrail.com |
| 72 | watchesways.com |
| 73 | watchjust.org |
| 74 | whynotreplica.com |

| 75 | xclones.su |
|----|------------|
| 76 | yeawatch.com |

**SCHEDULE B**
**CYBERSQUATTING DEFENDANTS BY NUMBER AND**
**CYBERSQUATTED SUBJECT DOMAIN NAME**

| Defendant Number | Defendant / Subject Domain Name |
|---|---|
| 1 | audemarspiguetreplica.us |
| 1 | breitlingreplicas.net |
| 1 | breitlingreplicas.nl |
| 32 | breitlingwatch.net |
| 32 | breitlingwings.com |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on April 4, 2016, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF. I also certify that a true copy of the foregoing

was served this 4th day of April, 2016, via e-mail to the e-mail addresses at which Defendants

were served and via publication by posting a true and accurate copy of the following

document(s) on the website http://servingnotice.com/fa72s/index.html.

 s:/<strong>Virgilio Gigante/</strong>_____<br>Virgilio Gigante